IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**JENNIFER HOLLIMON**                                            **PLAINTIFF**

**v.**                         **5:09CV00399 JLH/BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                   **DEFENDANT**

**RECOMMENDED DISPOSITION**

**I.**      **Procedure for Filing Objections and Introduction**

This recommended disposition has been submitted to Chief United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.

An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the Recommended Disposition. A copy of objections must be served on the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

Mail objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    Procedural History

Plaintiff, Jennifer Hollimon, has appealed the final decision of the Commissioner of the Social Security Administration that denied her claim for Disability Insurance benefits and Supplemental Security Income based on disability.  Plaintiff alleged that she was limited in her ability to work by insulin-dependent diabetes and neuropathy.  (Tr. 110)  The Commissioner found that she was not disabled within the meaning of the Social Security Act (the Act).

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Act at any time through March 13, 2009, the date of his decision.  (Tr. 19-20)  On November 6, 2009, the Appeals Council received and considered additional evidence, but denied Plaintiff's request for a review of the ALJ's decision.  At that time, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3)  Plaintiff then filed her complaint initiating this appeal. (Docket #2)  Both parties have submitted appeal briefs, and the Plaintiff has filed a reply.  The case is now ready for decision.

## III.   ALJ's Decision

Plaintiff was 26 years old at the time of the hearing before the ALJ.  (Tr. 26)  She is a high school graduate who attended regular classes.  *Id.*  She had past relevant work as a child care worker.  (Tr. 18, 128-35)

---

[1] The Honorable Everet Dail Stiles.

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart P, 20 C.F.R. Part 404 (hereinafter "a Listing"); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from doing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g) (2005).

The ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12) He found Plaintiff had four "severe" impairments: diabetes, peripheral neuropathy, hypertension and depression. He concluded, however, that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing. *Id.* He further found that Plaintiff's allegations about her limitations were not totally credible. (Tr. 13)

The ALJ concluded that Plaintiff retained the residual functional capacity for light work with a sit or stand option (Tr. 12-13, 16), but found she was unable to perform any past relevant work. (Tr. 18) He correctly noted that, once he determined that Plaintiff was unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education, and past work. (Tr. 12) Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations; for example, cashier. (Tr. 19)

**IV.     Analysis**

    A.     *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g).  "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion."  *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).  In reviewing the record as a whole, the Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner."  *Pelkey v. Barhart*, 433 F.3d 575, 578 (8th Cir. 2006).

    B.     *Testimony of the Vocational Expert*

Plaintiff argues the Commissioner did not meet his burden at Step 5 of the sequential evaluation process because the vocational expert's testimony conflicted with the Dictionary of Occupational Titles (DOT).  (Plaintiff's Brief 15-18)

The vocational expert's testimony, in pertinent part, reads as follows:

> ALJ:  All right.  Thanks.  Let me ask Mr. Welch a question or two.
>
> (The vocational expert, MACK WELCH, having been duly sworn, testified as follows:)
>
> EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:
>
> Q:  You are Mack Welch, and you've been asked here today to give testimony or evidence relative to vocational possibilities here.  Correct?
>
> A:  Yes sir.  That's correct.
>
> Q:  Any occupational evidence you provide, Mr. Welch, should be consistent with the occupation information provided by the Dictionary of Occupational Titles.  If there's an unresolved conflict between your

testimony and the DOT, you would be able to explain the conflict and give us the source of your information. Would you?

 A: Yes, sir, I would.

 Q: Please assume you are dealing with an individual who is the same age as the Claimant with the same educational background and past work experience. Further assume that the individual retains a residual functional capacity for light work with the following additional limitations. This individual would need a sit/stand option. Also would be limited to doing simple routine repetitious work with one or two-step instructions, a low-stress environment with occasional superficial interaction with the public, coworkers, and supervisors. Could that individual -- I don't know that we have past relevant here except her testimony was that she worked full-time at a daycare center for several months.

 A: I show that from October '04 through July of '05.

 Q: Okay.

 A: That would be a semi-skilled position, SVP of three, and it falls into the medium exertional category.

 Q: All right.

 A: The other work --

 Q: Go ahead.

 A: There are [INAUDIBLE].

 Q: Okay. All right. Well, given that hypothetical could that individual, and we'll call that past relevant. Could that hypothetical individual perform that job?

 A: No sir. The exertional limits of the hypothetical would preclude that job.

 Q: All right. Could that hypothetical individual perform other jobs that exist in the local, regional, or national economy?

 A: Yes sir. There are some cashier positions in the unskilled category and provide a sit/stand option in the hypothetical. Nationally there are approximately 900,000 of these jobs. Regionally there is approximately [INAUDIBLE]. DOT Number is 211.462-010.

 HA: Sorry, Mr. Welch. Can I interrupt you? I did not catch the in the region number. You blocked out there for a second.

5

>   VE:  Approximately 200,000.
>
>   HA:  Thank you.
>
>   ALJ:  Please assume you're dealing with the same individual with the same education and background and these limitations that I set out in the first hypothetical but with these additional limitations. Due to a combination of medical problems, associated pain, and anxiety this individual would not be able to engage in sustained work activity for a full eight-hour day on a regular and consistent basis. Would there be any job at any level of the economy that one with those limitations could be expected to perform?
>
>   VE:  No sir. I would not be able to identify jobs in the national or regional economy for someone with those [INAUDIBLE].
>
>   ALJ:  All right. Or local?
>
>   VE:  Or local.
>
>   ALJ:  All right. All right. Mr. Worsham, questions?
>
>   ATTY:  Just one, Your Honor, and it's about the sit/stand option at the light level. Mr. Welch, my understanding of what the DOT says about light work is that it pretty much requires you to be up on your feet most of the time. Where does the sit/stand option come from at the light level? Where are you getting that information?
>
>   VE:  Well, for this job actually there's approximately 3.1 million cashier positions in the unskilled level in [INAUDIBLE], and the jobs that would be with a sit/stand option would be comparable to those that do nothing but cashier work, no stocking, wouldn't be any stocking involved. So, there's – we've all seen that. So there's required to do is nothing but a cashier. So, it would be much less than [INAUDIBLE].
>
>   ATTY:  Okay. So, am I understanding that the existence of those jobs is basically based on your observations of people working in that capacity?
>
>   VE:  That's correct.

(Tr. 44-47)

Generally, when vocational expert testimony conflicts with the DOT, it is the DOT that controls. *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995); *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995). A vocational expert's testimony does not have to agree in

6

all respects with the DOT, however, in order to be considered substantial evidence. Courts routinely acknowledge these differences.

The DOT, in its job definitions, sets out approximate maximum requirements for each position, rather than a range of requirements. *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007); *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998); *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995). DOT classifications may be rebutted where, as here, vocational testimony properly supports a deviation. *Montgomery v. Chater, supra, citing Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); see also DOT at xiii.

The Court of Appeals has repeatedly rejected the argument Plaintiff raises here. *Misner v. Chater*, 79 F.3d 745 (8th Cir. 1996); *Carlson v. Chater*, 74 F.3d 869 (8th Cir. 1996). So has this Court. In an appeal brought by Plaintiff's attorney in another case, the Court noted:

> Next, Plaintiff contends that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles. (Br.20-21) In support of that contention, Plaintiff quotes a portion of Social Security Ruling 83-12:
>> However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.
>
> (Br.21) Plaintiff's argument is based on an incomplete reading of SSR 83-12, however. The sentence following the above quoted portion adds: "In cases of unusual limitation of ability to sit or stand, a VS [FN7] should be consulted to clarify the implications for the occupational base." SSR 83-12, at 4. That is precisely what the ALJ did. He called a vocational expert. See *Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir.1996)(ALJ properly consulted vocational expert pursuant to SSR 83-12 when claimant was required to alternately sit and stand). Plaintiff's argument lacks merit.
>
>> FN7. A VS is a vocational specialist, a term which describes all vocational resource personnel, including vocational consultants, vocational evaluation workshops and vocational experts. SSR 83-12, at 2.

7

*Conyer v. Astrue*, 2009 WL 2524553, at 4 (E.D. Ark.).

It is not the task of this Court to review the evidence and make an independent decision; neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.

V.   **Conclusion**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, as well as the medical and other evidence.  There is ample evidence on the record as a whole that, "a reasonable mind would find adequate to support the ALJ's conclusion."  *Nicola*, 480 F.3d at 886.  The Commissioner's decision is not based on legal error and, therefore, should be affirmed.

For these reasons, the Court recommends that the District Court affirm the final determination of the Commissioner and dismiss Plaintiff's complaint, with prejudice.

DATED this 9th day of November, 2010.

_____
UNITED STATES MAGISTRATE JUDGE